**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **VICTOR WAYNE BELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:05-cv-885-MHT-VPM** |
| | ) | |
| **SHERIFF JAY JONES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SPECIAL REPORT**

COMES NOW Sheriff Jay Jones, Defendant in the above-styled cause and submit his Special Report to the Court as follows:

I.     <u>INTRODUCTION</u>

Plaintiff in this action, Victor Wayne Bell, hereinafter "Plaintiff" or "Bell," filed a Complaint in the United States District Court for the Middle District of Alabama, Eastern Division, on or about September 15, 2005.  This Court entered an Order on September 19, 2005, instructing the Defendant to file a Special Report addressing Plaintiff's claims.  The Court, having granted Defendant's Second Motion for Extension of Time for filing the Special Report and Answer, ordered the same to be filed on or before November 28, 2005.

Plaintiff was arrested on February 28, 2005, and placed in the Lee County Detention Facility on charges of Burglary, Third Degree, and two counts of Theft First Degree.  The Plaintiff was convicted of Burglary Third Degree and sentenced to sixteen (16) years on September 6, 2005.  The Plaintiff was then transferred to the Department of Corrections of November 14, 2005.  <u>See</u> Arrest and Booking Documents, attached hereto as Exhibit A.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations concern various conditions of his confinement, including: 1) jail's sprinkler system; 3) toilets running over; 3) overcrowding; and 4) food; as well as allegations concerning medical care. See Plaintiff's Complaint. Plaintiff's claims are made against Sheriff Jay Jones. However, there are no specific allegations made against the Defendant.

## III.    DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendant denies the allegations made against him by Plaintiff as being untrue and completely without basis in law or fact. Defendant raises the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendant reserves the right to add additional defenses if any further pleading is required or allowed by the Court.

## A.    FACTS

As the Plaintiff has failed to allege how this Defendant specifically or personally violated his constitutional rights each of the Plaintiff's allegations will be addressed generally.

### 1.    Jail Maintenance

#### a.    Fire Sprinkler System

Contrary to the Plaintiff's allegation that the "fire sprinkler system…seems to not be in working order," the sprinkler system is completely operational and has been at all times during the Plaintiff's incarceration. Although the E-Block has been painted, and some paint may have accumulated on the sprinkler system, the paint did not render the sprinkler system inoperable in any way. In fact, the Fire Marshal inspects the Lee County Detention Facility sprinkler systems to ensure the safety of all inmates and officers as well as to ensure our compliance with fire codes. At

no time during the Plaintiff's incarceration did Major Cary Torbert[1] receive any information that the sprinkler system was not operating or was thought to be inoperable.  See Affidavit of Cary Torbert, attached hereto.

        b.      Toilet Running Over

With regard to the Plaintiff's allegations concerning the toilet running over, certainly, there are occasions when the toilets in the cell block run over; however, it is almost always due to inmate vandalism, as the inmates have been known to stuff any numbers of items, including toilet tissue, rags, t-shirts, materials stripped from linens, bars of soap, and other items in the toilet which cause them to over flow.  When ever a toilet does over flow, the water is shut off, and the commode is repaired as soon possible.  Never has Major Torbert received any kind of complaint, whatsoever concerning any problem with the commode in the Plaintiff's cell.  Had Major Torbert received such a complaint he would have investigated the matter and responded accordingly.  See Affidavit of Cary Torbert, Jr., attached hereto.

        c.      Overcrowding

At times it is necessary – due to classification concerns for the separation of felons and misdemeanants and pre-trial detainees, movement of the inmates due to known enemies, separation of multiple defendants prior to trial and other concerns – that a cell may have additional inmates.  In such instances, the additional inmates were provided mattresses, bedding linens, and blankets for sleeping.  See Affidavit of Cary Torbert, Jr., attached hereto.

In addition, prior to Plaintiff's incarceration, cots were ordered such that during times of housing additional inmates in the cell block, their mattresses could be placed on the cots rather than

---

[1] Major Cary Torbert, Jr., serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major.  He has worked with the Lee County Sheriff's Department for over 32 years. See Affidavit of Cary Torbert, Jr., attached hereto.

the floor. Never has an inmate had to sleep on the floor that he was not provided with a mattress and bedding linens. According to the Plaintiff's inmate file, never has he made any complaint, prior to the time of the filing of this lawsuit, about overcrowding or his sleeping arrangement. See Affidavit of Cary Torbert, Jr., attached hereto.

    2.    Food

With regard to the Plaintiff's allegations regarding the food provided at the Lee County Detention Facility, the menus are written out each month based on an original pre-approved menu. The menu is then taken by Major Torbert to the Auburn University Extension Office for review by a certified dietitian. The dietitian makes any necessary revisions to the menu, which Major Torbert then adopts, and approves the menu as meeting all nutritional requirements. It is from this dietitian-approved menu that all meals have been served to inmates in the Lee County Detention Facility over the past two years. See Affidavit of Cary Torbert, Jr., attached hereto.

Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. With regard to fruit, every Sunday the inmates receive an orange or an apple. Additionally, two times each week the jail serves peaches, pears, fresh apples, or baked apples with a meal. See Affidavit of Cary Torbert, Jr. attached hereto.

Never has Major Torbert received any complaint from Mr. Bell regarding the food or any other concerns he had about meals at the Lee County Detention Facility. Had any complaint been made to Major Torbert by Mr. Bell, he would have addressed his concerns or discussed his complaint with Lt. Roberson. However, no such complaint has ever been made known to Major Torbert by Mr. Bell. See Affidavit of Cary Torbert, Jr. attached hereto.

3.    Medical Attention

It is the policy and procedure to the Lee County Detention Facility to provide prompt medical attention to all inmates upon their written or verbal request, in emergency situations, or when it is apparent to officers that they are in need of medical attention.  The Lee County Detention Facility has a nurse on duty at the jail from 8:00 a.m. to 10:00 p.m. each week day and additional nursing services on the weekend.  Also, a physician comes weekly, or more often if needed, to the Detention Facility to examine and treat all inmates who request to see a doctor or who have been placed on the physician's list by a nurse.  Upon review of Plaintiff's medical file by the medical staff, it appears that the Plaintiff received medical care upon each of his requests.  See Affidavit of Jay Jones[2], attached hereto.

Although the Plaintiff submitted twenty-six requests for Tylenol (or Motrin or Advil) and over-the-counter anti-acid medication, as well as being seen by Nurse Stewart, never did the Plaintiff request to be placed on the dental list such that he would seen at the first available time by the Dentist.  See Request Forms attached hereto as Exhibit B.  Nurse Stewart's records do not indicate that the Plaintiff was ever placed on the dental list, which would have been done had he made any requests for the same.  In fact, the only medical request even related to a dental concern was regarding his need for Fix-a-Dent, which was obtained for him.  Other than this one request, there was no other mention of any concern related to neither a dental problem nor a specific request to be seen by the dentist.  See Affidavit of Linda Stewart[3] attached hereto.  Likewise, never did Nurse Stewart receive any complaint whatsoever regarding the Plaintiff's blood pressure.  Had the Plaintiff ever complained about hypertension or suggested that he might

---

[2] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.
[3] Linda Stewart has been employed as a nurse with the Lee County Detention Facility for over four years.  She is an L.P.N. and has been licensed for over twenty years.  She has served as a nurse in the ICU and CCU in Cobb Hospital

have suffered from high blood pressure, Nurse Stewart would have examined him regarding the same and made the doctor aware of any concerns. This was, however, not the case as it was never mentioned to Nurse Stewart, either verbally or in a written request, that he had any concern whatsoever about his blood pressure. See Affidavit of Linda Stewart, attached hereto. With regard to the Plaintiff's spider bite, he was seen by Dr. McFarland, the physician who attends to inmates at the Lee County Detention Facility, on July 6, 2005. Dr. McFarland prescribed medication, Septra DS, for the Plaintiff and noted that he was to be rechecked if needed. Apparently, the Plaintiff had no further problems with the infected area as he made no other requests to be seen by the Nurse or the Doctor regarding this particular matter. Therefore, the Plaintiff's claim that he received "no kind of treatment" for the spider bite is complete baseless. See Doctor's Notes, attached hereto as Exhibit C; see also Affidavit of Linda Stewart, attached hereto.

    4.    Defendant's Lack of Knowledge About Plaintiff's Complaints

Although the Defendant is familiar with the Plaintiff, Victor Wayne Bell, due to his incarceration in the Lee County Detention Facility, the Defendant was not aware of any problems from which the Plaintiff suffered as a result of the alleged inadequate jail conditions. In fact, the Plaintiff made no written or verbal requests, nor did he submit any grievance to this Defendant, or anyone else, concerning any of the claims made the basis of his Complaint. See Affidavits of Sheriff Jay Jones, Cary Torbert, and Nurse Stewart, attached hereto.

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. The inmates are given an Inmate

---

Emergency Room for fifteen years and as the nurse for Dr. Hoffman in Phenix City, Alabama, for twelve years prior to coming to the Lee County Detention Facility. See Affidavit of Linda Stewart, attached hereto.

Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have. At no time, however, did the Plaintiff file any grievances concerning any of the claims made in his Complaint. Had such a grievance been filed, it would have been acted upon accordingly (that is, whether an investigation was needed or simply a response made to the complaints). <u>See</u> Affidavit of Cary Torbert, Jr., attached hereto.

B.    LAW

     1.    <u>Any claim by Plaintiff against Defendant in his official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.</u>

Plaintiff's claims against Defendant in his official capacity are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity).

In addition, the official capacity claim must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Any claim against the Defendant in his official capacity should therefore be dismissed because he is not a "person" under § 1983 and therefore claims against him in his official capacity fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

2.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. Inmates are given an Inmate Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have. No such grievance was filed by the Plaintiff as there is not a grievance form in his jail file concerning the claims made the basis of this Complaint. See Affidavit of Torbert, attached hereto.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Lee County is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment. As a result of Plaintiff's failure to exhaust these two remedies, he is barred from

bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies)[4].

3.   Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions.  The PLRA states the following concerning physical injury:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant.  Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc).  In the present action, Plaintiff suffered no physical injury as a result of the allegation described in his Complaint and even admitted that his Complaint was for a "mental

---

[4] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001) (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Lee Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); But see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

9

thing." <u>See</u> Plaintiff's Complaint.    As a result, the case is due to be dismissed pursuant to 42

U.S.C § 1997e(e).

      4.    <u>Plaintiff's claims against Defendants Sheriff Jones must fail because there is no</u>
<u>*respondeat superior* liability under § 1983.</u>

Plaintiff does not allege that Defendant Sheriff Jones was in any way personally involved

in Plaintiff's alleged constitutional violation.   Defendant therefore construes Plaintiff's claims

against him as an attempt to hold him liable under a *respondeat superior* theory.   To the extent

Plaintiff seeks relief on that basis,

> [Supervisory] liability under § 1983 must be based on something more than a
> theory of *respondeat superior*.   Supervisory liability occurs either when the
> supervisor personally participates in the alleged constitutional violation or when
> there is a causal connection between actions and the supervising official and the
> alleged constitutional violation.  The causal connection can be established when a
> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged depravation, and he fails to do so.

<u>Dolihite v. Maughon</u>, 74 F.3d 1027, 1052 (11th Cir. 1996).   Therefore, Plaintiff's claims against

the Defendant are due to be dismissed.

      5.    <u>Plaintiff's claims against Defendant Sheriff Jones are due to be dismissed because he</u>
<u>had no personal involvement in the alleged constitutional violation.</u>

As to Defendant Sheriff Jones, the Plaintiff also fails to allege that said Defendant was in

any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning

the conditions of his confinement.   The language of 42 U.S.C. § 1983 requires proof of an

affirmative causal connection between the actions taken by the defendants and the constitutional

deprivation.   <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995).   The requisite causal

connection may be shown by the personal participation of the defendant, a policy established by the

defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of

local law which results in constitutional injury.   <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir.

1986).  Plaintiff has offered no evidence demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm.

There are absolutely no facts to show that this Defendant personally participated in the events made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how Defendant violated his constitutional rights.  In fact, Plaintiff merely asserts claims without any sufficient basis for such claims.  It is well established that conclusory allegations are insufficient to state a § 1983 claim for relief.  See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).  Further, the Plaintiff has failed to allege that he was in any way harmed or suffered any injury from the alleged violations of his constitutional rights.  As such, Plaintiff's claims are due to be dismissed against the Defendant.

> 6.   Alternatively, Defendant Sheriff Jones is entitled to summary judgment based on qualified immunity because nothing in his conduct crossed a "bright line" contour of clearly established constitutional law.

> a.   General Qualified Immunity Standard

Sheriff Jones was acting within his discretionary authority as Sheriff of Pickens County during all times relevant to Plaintiff's Complaint because all his actions were taken in the furtherance of his duties as the Sheriff.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to

the degree that this Defendant had "fair warning" that his conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of this Defendant was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, arguendo, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendant with fair warning that his conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided Sheriff Jones with fair warning that his conduct was unlawful. Therefore, Sheriff Jones is entitled to qualified immunity.

      b.     <u>Defendant was not deliberately indifferent with regard to Plaintiff's claims regarding his conditions of confinement.</u>

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. See Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

Plaintiff cannot show that Defendant have been deliberately indifferent with regard to the conditions of confinement at the Lee County Detention Facility. Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendant constituted cruel and unusual punishment. In this case, none of the conditions of which Plaintiff complaints constitutes an excessive risk to his health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical or mental condition actually resulted from the aforementioned environment. Finally, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendant knew of or disregarded any alleged risk. Based on the foregoing, it is clear that the Defendant did not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided the Defendant with fair warning that his conduct was unlawful. Therefore, the Defendant is entitled to qualified immunity.

      c.      Plaintiff has failed to establish any deliberate indifference on the part of Defendant to a serious medical condition from which Plaintiff suffered.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendant was deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Plaintiff has failed to show that he has had any serious medical condition. Further, the medical records show that Plaintiff was granted medical treatment upon his request by a licensed nurse and medical doctor. Clearly the Defendant has not acted with deliberate indifference.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts

hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendant does not have any kind of medical education, training or experience. He and the other non-medical jail officials rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[5] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

---

[5] The medical director was a trained and licensed nurse. 302 F.3d at 846.

302 F.3d at 849.

Similarly, in the instant case the Defendant is not a medical professional. Plaintiff was evaluated and treated by medical professionals every time he requested medical care. Therefore, the Defendant acted within constitutional parameters, and was in no way deliberately indifferent. Based on the foregoing, it is clear that the Defendant did not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided the Defendant with fair warning that his conduct was unlawful. Therefore, the Defendant is entitled to qualified immunity.

IV.    CONCLUSION

The Defendant denies each and every allegation made by Plaintiff Victor Wayne Bell in the Complaint. Defendant has not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

V.    MOTION FOR SUMMARY JUDGMENT

The Defendant respectfully requests that this Honorable Court treat his Special Report as a motion for summary judgment, and grant unto him the same.

Respectfully submitted this 28th day of November, 2005.

**s/Kelly Gallops Davidson**
KELLY GALLOPS DAVIDSON Bar No. DAV123
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  kdavidson@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 28th day of November, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Victor Wayne Bell
> AIS#176221
> Lee County Jail
> Opelika, AL 36801
>
> **s/Kelly Gallops Davidson**
> OF COUNSEL